IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHELLEY BLACK**,

    Plaintiff,

vs.                                        No. **CIV 06-314 MCA/CEG**

**ALVARO** and **MARTHA PADILLA**,

    Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Summary Judgment and Brief in Support* [Doc. 35] filed on April 4, 2007. Having reviewed the pleadings of record, the relevant law, and otherwise being fully advised in the premises, the Court grants Defendants' motion and dismisses this action with prejudice for the reasons set forth below.

**I.**     **BACKGROUND**

On March 14, 2006, Plaintiff Shelley Black filed a civil action in the Twelfth Judicial District Court of the State of New Mexico seeking specific performance of an alleged real estate contract with Defendants Alvaro and Martha Padilla. On April 19, 2006, Defendants removed the action to the United States District Court for the District of New Mexico based on diversity of citizenship under 28 U.S.C. § 1332. [Doc. 1.]

After filing their *Notice of Removal*, Defendants failed to file an answer within the time limits prescribed by Fed. R. Civ. P. 12, and the Clerk of the Court entered their default

on May 17, 2006. [Doc. 8.] Defendants promptly moved to set aside the entry of default, and the Court granted their motion on October 26, 2006. [Doc. 16.]

Following a scheduling conference pursuant to Fed. R. Civ. P. 16, the Court then entered an *Initial Pretrial Report* [Doc. 25] setting a trial date of August 14, 2007, a pretrial conference approximately one month earlier on July 3, 2007, and a dispositive motions deadline of April 3, 2007. Following the scheduling conference, Plaintiff's counsel filed a motion to withdraw. [Doc. 20, 23.] Plaintiff's counsel continued his representation while that motion was pending and attended a settlement conference on December 8, 2006. [Doc. 26.] He then withdrew his motion to withdraw as Plaintiff's counsel on December 13, 2006 [Doc. 27], only to file a second motion to withdraw [Doc. 30] on February 7, 2007. After Plaintiff filed a response indicating her concurrence in the second motion, [Doc. 32], the Court granted that motion in an *Order* [Doc. 34] filed on March 7, 2007.

Defendants moved for summary judgment on April 4, 2007. [Doc. 35.] Plaintiff, who now appears *pro se*, failed to file a response within the time limits prescribed by D.N.M. LR-Civ. 7.6, or at any time thereafter. The record does not indicate that Plaintiff filed a motion for leave to extend the deadline for filing such a response or any additional motion papers. Plaintiff has been afforded ample opportunity to obtain new counsel or file a response on her own behalf during the period of more than two months since Defendants' filed their motion for summary judgment, and the scheduled dates for the pretrial conference and trial date are now approaching.

By virtue of D.N.M. LR-Civ. 56.1, the following facts gleaned from Defendant Alvaro Padilla's affidavit and the real-estate documents attached thereto are undisputed or deemed admitted. [Doc. 35-2.] Defendants Alvaro and Martha Padilla have tried to sell their house in Ruidoso, New Mexico, at various times in the past several years, but have limited prior experience in real estate purchases or sales.

In early January 2006, Defendants were contacted by Pam Schuetz of Bill Pippin Real Estate concerning an offer by Plaintiff Shelley Black to purchase Defendant's house for $135,000. At that time, Ms. Schuetz provided Defendants with a large set of documents stapled together and entitled "Realtor Association of New Mexico Purchase Agreement - Residential Resale Agreement." Two pages of a Realtors Association of New Mexico Real Estate Contract were included in this set of documents, along with Part I and Part II of the required disclosures for a real estate agent, which were located at the very end.

Ms. Schuetz did not explain the set of documents or its contents to Defendants, and while Defendants signed and initialed the Purchase Agreement on January 17, 2006, there are three changes that were made subsequent to Defendant Alvaro Padilla's signature. Lacking any explanation to the contrary from Ms. Schuetz, Defendants believed at the time they signed the purchase agreement that it was just part of initial negotiations that would lead to a subsequent binding contract, and that Ms. Schuetz represented Defendants in the transaction.

Subsequently, Defendants received a document entitled "Real Estate Contract" from Ms. Schuetz and took it to an attorney for his review. Defendants were then informed of the

3

following unusual features of the proposed transaction: (1) the sale was a contract for deed with owner financing including a down payment of less than 10%, rather than a traditional sale with third-party financing; (2) an unknown entity named "the Avalon Trust" was substituted as the buyer in place of Plaintiff Shelley Black, and (3) the realtor had failed to disclose her duties as an agent prior to the time that she generated a document that could become an express written agreement.

As a result of being advised of these unusual features of the proposed sale, Defendants developed tremendous misgivings about it and ultimately refused to sign the contract or sell their house to Plaintiff. On February 27, 2006, Defendants offered to return Plaintiff's earnest money and down payment to her so that she could walk away from the proposed transaction. Plaintiff refused, and this litigation followed.

## II.  ANALYSIS

Under Fed. R. Civ. P. 56(c), the Court may enter summary judgment when the motion papers, affidavits, and other evidence submitted by the parties show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. A "genuine issue" exists where the evidence before the Court is of such a nature that a reasonable jury could return a verdict in favor of the non-moving party as to that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-52 (1986). An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim. See id. at 248. Judgment is appropriate "as a matter of law" if the non-moving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of

proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670-71 (10th Cir. 1998).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex Corp., 477 U.S. at 324; Wright-Simmons v. City of Okla. City, 155 F.3d 1264, 1268 (10th Cir. 1998).  "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'"  Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir.1991)).  Thus, "[h]earsay testimony cannot be considered" in ruling on a summary-judgment motion.  Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).  The Court may, however, consider admissions by a party opponent, see Fed. R. Evid. 801(d)(2), statements admissible for the limited purpose of showing their effect on the listener, see Faulkner v. Super Valu Stores, Inc., 3 F.3d 1419, 1434 (10th Cir. 1993), statements which constitute verbal acts or operative facts because legal consequences flow from their utterance, see Echo Acceptance Corp. v. Household Retail Servs., Inc., 267 F.3d 1068, 1087 (10th Cir. 2001), and other statements which fall under an exception to the hearsay rule, see, e.g., Fed. R. Evid. 803(3) (allowing for consideration of statements as circumstantial proof of the knowledge, intent, or state of mind of the declarant).

Apart from these limitations imposed by the Federal Rules of Evidence, it is not the Court's role to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment. Rather, the Court assumes the admissible evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all admissible evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor. See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

When, as here, the non-movant does not file a timely response to a dispositive pretrial motion, the Court may not rely on this fact alone, without further analysis, as the grounds for granting summary judgment in the movant's favor. See Reed v. Bennett, 312 F.3d 1190, 1194-95 (10th Cir. 2002). In order to reach such a result under this scenario, the Court must either perform the sanctions analysis outlined in Meade v. Grubbs, 841 F.2d 1512 (10th Cir. 1988), or "make the determination that judgment for the moving party is 'appropriate' under Rule 56." Reed, 312 F.3d at 1195. In this case, the Court relies on the procedure set forth in Fed. R. Civ. P. 56, rather than the Meade sanctions analysis. The Court does *not* construe Plaintiff's failure to respond in this manner as an indication of her consent to grant the motion under D.N.M. LR-Civ. P. 7.1(b).

In applying the procedure set forth in Fed. R. Civ. P. 56, however, the Court may consider any undisputed material facts set forth in the motion papers which are deemed admitted by operation of D.N.M. LR-Civ.56.1. See LaMure v. Mut. Life Ins. Co. of N.Y., 106 F.3d 413, 1997 WL 10961, at *1 (10th Cir. 1997) (unpublished disposition); Smith v.

6

E.N.M. Med. Ctr., 72 F.3d 138, 1995 WL 749712, at *4 (10th Cir. 1995) (unpublished disposition); Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-24 (7th Cir.1994) (approving use of local rule similar to D.N.M. LR-Civ. 56.1(b)). Application of D.N.M. LR-Civ. P. 56.1 is consistent with the Tenth Circuit's holding in Reed, 312 F.3d at 1195, which specifically instructs that the "court should accept as true all material facts asserted and properly supported in the summary judgment motion" under these circumstances. Therefore, the facts gleaned from Defendant Alvaro Padilla's affidavit and the real-estate documents attached thereto are undisputed or deemed admitted by virtue of D.N.M. LR-Civ. 56.1.

Defendants' motion for summary judgment calls into question whether there is a valid and enforceable purchase agreement or real estate contract on which Plaintiff may base her claim for specific performance. "The specific performance remedy is a form of injunctive decree in which the court orders the defendant to perform the contract." 3 Dan B. Dobbs, Dobbs Law of Remedies § 12.8(1), at 190 (2d ed. 1993). In this context, "[a]n injunction is an equitable remedy, left to the sound discretion of the district court so long as the exercise of discretion is consistent with 'reasonably well established standards' of fairness and equity." Cafeteria Operators, L.P. v. Coronado-Santa Fe Assocs., L.P., 1998-NMCA-005, ¶ 19, 124 N.M. 440, 952 P.2d 435 (quoting 5A Arthur Linton Corbin, Corbin on Contracts § 1136 (1964 & 1997 Pocket Part)).

An action for specific performance may be subject to both substantive and equitable defenses. See 3 Dan B. Dobbs, supra, § 12.8(4), at 215. "A review of New Mexico case law indicates that our courts have long considered equitable bars to enforcement of property

7

rights."   Cafeteria Operators, L.P., 1998-NMCA-005, ¶ 18.   In particular, "specific performance and injunction are unavailable if [the] act that would be compelled is contrary to public policy." Dacy v. Village of Ruidoso, 114 N.M. 699, 705, 845 P.2d 793, 799 (1992) (citing Restatement (Second) of Contracts § 365 (1979)).

   In this case, Defendants contend that specific performance of the alleged contract is contrary to the public policy expressed in New Mexico's statutory and common law regarding the fiduciary duties a real estate agent owes to her principals.  In particular, Defendants cite the following provision of the New Mexico statutes governing real estate brokers and salespersons that went into effect on January 1, 2006: "Prior to the time a licensee generates or presents any written document that has the potential to become an express written agreement, the licensee shall give to the prospective . . . seller . . . a list of the licensee's duties that are in accordance with requirements established by the [real estate] commission." N.M. Stat. Ann. § 61-29-10.2 (Michie Supp. 2006).   This version of the statute applies to Ms. Schuetz's contacts with Defendants because she first presented them with the proposed purchase agreement at issue in this case in early January 2006.

   At that time, it appears that Ms. Schuetz was operating under a prior, outdated version of the statute, effective from January 1, 2004, to July 1, 2006, under which "[a] licensee shall give to a prospective . . . seller . . . at the time when the parties enter into an express written agreement, a list of the licensee's duties that are in accordance with the requirements established by the commission." N.M. Stat. Ann. § 61-29-10.2 (Michie 2003) (repealed July 1, 2006).  Thus, Ms. Schuetz included her disclosure forms at the end of the package of

documents that Defendants signed in mid-January 2006, rather than as a separate submission before any written agreement was presented or generated. [Ex. 1 to Doc. 35-2.]

Whether Ms. Schuetz's failure to comply with the current version of New Mexico's disclosure statute has the effect of precluding enforcement of the alleged contract by means of the remedy of specific performance depends on the purpose of the statute and the weight of public policy behind it. The general rule is that:

> If a party is prohibited from doing an act because of his failure to comply with a licensing, registration or similar requirement, a promise in consideration of his doing that act or of his promise to do it is unenforceable on grounds of public policy if
>
> (a) the requirement has a regulatory purpose, and
>
> (b) the interest in the enforcement of the promise is clearly outweighed by the public policy behind the requirement.

Restatement (Second) of Contracts § 181 (1979); accord 15 Grace McLane Giesel, Corbin on Contracts: Contracts Contrary to Public Policy § 88.1, at 570 (rev. ed. 2003).

The provision of the New Mexico statute defining a licensee's disclosure obligations has a regulatory purpose, and as a matter of law this purpose must weigh heavily in the Court's analysis because of its central role in the creation of a fiduciary relationship with the licensee, which in turn impacts any contract formation between buyer and seller that may follow. "It is well-established in New Mexico law that a real estate agent stands in a fiduciary relationship with his principal and must reveal all facts within his knowledge which might affect his principal's decisions, rights and interests." Swallows v. Laney, 102 N.M. 81, 83, 691 P.2d 874, 876 (1984). New Mexico's licensing statute specifies that such a

fiduciary relationship is to be "created solely by an express written agency agreement between a person and a brokerage, authorizing the brokerage to act as an agent for the person according to the scope of authority granted in that express written agreement for real estate services subject to the jurisdiction of the [real estate] commission." N.M. Stat. Ann. § 61-9-2(A)(1) (Michie Supp. 2006). Where the licensee fails to make the disclosures required under N.M. Stat. Ann. § 61-29-10.2 *before* entering into a written agreement with a seller, the fiduciary relationship is deficient from the outset because the licensee has failed to "reveal all facts within his knowledge which might affect his principal's decisions, rights and interests." Swallows, 102 N.M. at 83, 691 P.2d at 876.

The timing of such disclosures is particularly important in dual agency transactions where the licensee purports to represent the interests of both the buyer and the seller, as

> the property owner who is asked to sign a listing agreement because the broker has a buyer for the property may not fully comprehend that the broker intends to act as a dual agent. Because the seller pays the broker's commission, the seller may reasonably believe the broker has only the seller's best interest at heart and is working exclusively for the seller.
>
> The disclosure form tells the property owner that a broker can act as a dual agent. Thus advised, the seller may wish to sell the property through his or her own agent or to seek independent advice on the price and terms of the listing.

Huijers v. DeMarrais, 14 Cal. Rptr. 2d 232, 238 (Cal. App. 1992). And "it is not enough to disclose only the fact of dual representation. The agent must also disclose all facts which would reasonably affect the judgment of each party in permitting the dual representation." Id.

Under these circumstances, the statutory requirement of disclosing the dual-agency relationship *before* entering into any written agreement serves to codify the common-law rule that "'an agent vested with discretionary authority cannot represent two parties having conflicting interests without the principal's prior consent or subsequent ratification after full disclosure of all the facts. The underlying reason for the rule is the public policy to prevent fraudulent conduct.'" Dismuke v. Edina Realty, Inc., No. 92-8716, 1993 WL 327771, at *3 (Minn. Dist. Ct. 1993) (quoting Boulevard Plaza Corp. v. Campbell, 94 N.W.2d 273, 281 (Minn. 1959)). The New Mexico Supreme Court followed a variation of the same rule when it analyzed the fiduciary duties of an agent who seeks to purchase his principal's property for himself in the absence of a written listing agreement. See Swallows, 102 N.M. at 85, 691 P.2d at 878.

Courts may differ, however, with respect to the scope of the remedy available to cure a licensee's violation of the duty to timely disclose a dual-agency relationship before entering into any kind of written agreement. The failure to make timely disclosures may relieve a party of the obligation to pay the licensee's commission, and in some cases it also may give rise to a right to rescind the entire purchase agreement or real estate contract which the licensee participated in negotiating. See Huijers, 14 Cal. Rptr. 2d at 686-87.

Both New Mexico law and the undisputed facts of this case support rescission of the purchase agreement and real estate contract in their entirety. Defendants have limited prior experience in real estate purchases and sales. [Padilla Aff. ¶ 4, Ex. A to Doc. 35-2.] Absent full disclosure by a licensee, it would not be reasonable to expect them to understand the

nature of the dual-agency relationship or the particular details of the proposed transaction which favored Plaintiff, such as the low down payment, the lack of third-party financing, or the attempt to substitute an unknown entity, the Avalon Trust, as the buyer listed in the proposed real estate contract. [Ex. 1, 2 to Doc. 35-2.] Further, Plaintiff has not identified a specific interest in the enforcement of the proposed contract beyond that inherent in the sale of any unique parcel of real property.

Under these circumstances, New Mexico law accords with the Minnesota court's conclusion in Dismuke, No. 92-8716, 1993 WL 327771, at *3, that "[i]f a breach in fiduciary duty is found, the transaction is void as against public policy whether the broker has profited thereby or not." Swallows, 102 N.M. at 85, 691 P.2d at 878. Especially when the breach occurs at the outset of the sellers' relationship with a dual agent who is presenting a buyer's offer that is somewhat complex or unusual due to its provisions for seller financing, it makes sense under the above principles to void the transaction in its entirety and return the parties to the positions they occupied before the dual agent entered the picture.

## III.   CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment based on undisputed material facts warranting rescission of the alleged purchase agreement or real estate contract on which Plaintiff bases her claim for specific performance. Because Plaintiff's claim for specific performance is not enforceable, Defendants also are entitled to summary judgment on Plaintiff's claims for attorney fees and costs.

**IT IS THEREFORE ORDERED** that *Defendant's Motion for Summary Judgment and Brief in Support* [Doc. 35] is **GRANTED**.

**IT IS FURTHER ORDERED** that the PRETRIAL CONFERENCE previously set for Tuesday, July 3, 2007, at 9:00 a.m., the CALL OF THE CALENDAR previously set for Thursday, August 9, 2007, at 9:00 a.m., and the BENCH TRIAL previously set for Tuesday, August 14, 2007, at 9:00 a.m. are **VACATED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**, this 6th day of June, 2007, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge